IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL ZVOLON AMITAY,<br><br>    Plaintiff,<br><br>    v.<br><br>JEWS FOR JESUS, INC.,<br><br>    Defendant. | Case No. 25-cv-01258-MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS; VACATING HEARING** |

    Before the Court is plaintiff Ariel Zvolon Amitay's ("Amitay") "Motion to Remand to Superior Court [and] Request for Attorneys' Fees and Costs," filed March 7, 2025. Defendant Jews for Jesus, Inc. ("Jews for Jesus") has filed opposition, to which Amitay has replied. Having read and considered the papers filed in support of and in opposition to the motion and request, the Court deems the matters appropriate for determination on the parties' respective written submissions, VACATES the hearing scheduled for April 25, 2025, and rules as follows.

    In the operative complaint, filed in California state court on December 24, 2024, Amitay asserts four Causes of Action, titled, respectively, "Defamation," "False Light," "Intentional Infliction of Emotional Distress," and "Negligent Infliction of Emotional Distress," which claims are based on his allegation that Jews for Jesus "uploaded photos of Amitay on their social media pages" and "included a caption" that "falsely express[ed] that Amitay supported [Jews for Jesus's] religious views." (See Compl. ¶ 14.)

    On February 5, 2025, Jews for Jesus removed the action, on the asserted ground that a federal question exists or, alternatively, that diversity jurisdiction exists. By the instant motion, Amitay argues that no federal question is presented and that Jews for

Jesus cannot remove on the basis of diversity due to its status as a citizen of California. The Court considers the two issues, in turn.

**A. Federal Question**

As noted, Amitay asserts four Causes of Action. Each Cause of Action is, on its face, a claim under state law. In its Notice of Removal, however, Jews for Jesus asserts that a federal question exists, which it identifies as follows: "This case involves the free speech and free exercise of religion of a religious non-profit organization engaged in public discourse on matters of public interest, and necessarily requires the consideration and adjudication of issues related to the First Amendment to the United States Constitution, which protects these fundamental rights." (See Notice of Removal ¶ 33.)

Although, as Jews for Jesus points out, a defendant can raise in district court a First Amendment defense to state law claims arising from the defendant's speech-related conduct, such protection does not itself give rise to federal jurisdiction. See, e.g., Snyder v. Phelps, 562 U.S. 443, 448-50, 458-60 (2011) (finding, in diversity action, First Amendment barred state law claims arising from picketing in public place); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003) (holding, in diversity action, "[m]otions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court"). Rather, contrary to Jews for Jesus's argument, the existence of a federal defense to a state law claim cannot create a federal question, as "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." See Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987) (holding "Congress has long since decided that federal defenses do not provide a basis for removal").

In its opposition, Jews for Jesus identifies what it contends is another federal question. Specifically, it asserts, "[t]o the extent that Amitay seeks to recover damages arising from the reproduction or display of the photograph, rather than from an alleged misuse of his identity, those claims are preempted by the Copyright Act." (See Def.'s

Opp. at 24:4-6.)

A state law claim is preempted by the Copyright Act where the "subject matter" of the claim "falls within the subject matter of copyright," such as "pictorial . . . works," and "the rights asserted under state law are equivalent to the rights contained in [the Copyright Act]," such as the right to distribute copies of photographs. See Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1137-38 and nn. 1, 3 (9th Cir. 2008).  Here, however, Jews for Jesus cites to no section of the Complaint in which Amitay challenges the reproduction or display of the photograph in and of itself or otherwise seeks to base recovery on a right equivalent to one in the Copyright Act.  Rather, Amitay, who does not allege he has any rights in the photograph used by Jews for Jesus, seeks to recover damages based on alleged damage to his reputation resulting from an assertedly false statement (see Compl. ¶¶ 21-23, 25-27, 29) as well as damages due to emotional distress he claims resulted from the assertedly false statement (see Compl. ¶¶ 29-31, 35-37).  The rights protected by defamation law and by the law prohibiting the intentional infliction of emotional distress are not, at least in the context of the instant case, rights equivalent to those under the Copyright Act.  See Laws, 448 F.3d at 1143 (explaining state law claims not preempted by Copyright Act where claims "protect rights which are qualitatively different from the copyright rights") (internal quotation and citation omitted); see also, e.g., Anderson v. Jackson, 2005 WL 8166024, at *4 (C.D. Cal. August 8, 2005) (holding slander claim not preempted, where claim based on false statement about plaintiffs, an "'extra element' that renders [the slander claim] qualitatively different from a claim for copyright infringement"); Sturdza v. United Arab Emirates, 281 F.3d 1287, 1305-06  (D.C. Cir. 2002) (holding claim for intentional infliction of emotional distress not preempted, where based on conduct other than defendant's use of plaintiff's work).

Accordingly, Jews for Jesus has failed to show any of Amitay's claims present a federal question.

**B.  Diversity Jurisdiction**

A district court has diversity jurisdiction where the amount in controversy exceeds

3

1   $75,000, see 28 U.S.C. § 1332(a), and the action is between "citizens of a State and

2   citizens or subjects of a foreign state," see 28 U.S.C. § 1332(a)(2).

3       Here, Amitay seeks recovery of, inter alia, "punitive and exemplary damages of at

4   least $5,000,000" (see Compl., Prayer for Relief, ¶ D), and Amitay does not dispute Jews

5   for Jesus's allegations that it is a citizen of California and he is a citizen of Israel (see

6   Notice of Removal ¶¶ 7-8). Amitay contends, however, remand is required in light of the

7   forum defendant rule, under which "[a] civil action otherwise removable solely on the

8   basis of [diversity] may not be removed if any of the parties in interest properly joined and

9   served as defendants is a citizen of the State in which such action is brought." See 28

10  U.S.C. § 1441(b)(2). In response, Jews for Jesus argues it was not "properly" served

11  prior to removal, and, consequently, that the forum defendant rule is not applicable.

12      District courts have disagreed as to whether a forum defendant may engage in a

13  "snap removal," i.e., a removal where the defendant has not yet been served. See

14  American Family Connect Property & Casualty Ins. Co. v. Hyundai Motor America, 2024

15  WL 4454097, at *2 (C.D. Cal. October 8, 2024) (citing conflicting authority). For purposes

16  of the instant action, the Court assumes snap removals are permissible, but finds, as

17  discussed below, Jews for Jesus was properly served prior to February 5, 2025, the date

18  on which the instant action was removed.

19      In determining whether Jews for Jesus was properly served prior to removal, the

20  Court applies state law. See Lee v. City of Beaumont, 12 F.3d 933, 936-37 (9th Cir.

21  1993) (holding "[t]he issue of the sufficiency of service of process prior to removal is

22  strictly a state law issue"). Under California law, a corporation can be served in two

23  ways. One alternative, set forth in § 416.10 of the Code of Civil Procedure, is that the

24  process server "deliver[ ] a copy of the summons and complaint" to an individual holding

25  a specified title, such as "the person designated as agent for service of process," see

26  Cal. Code Civ. Proc. § 416.10(a), or "the controller or chief financial officer" of the

27  corporation, see Cal. Code Civ. Proc. § 416.10(b). The other alternative, set forth in

28  § 415.20(a), is that, "[i]n lieu of personal delivery of a copy of the summons and complaint

to the person to be served as specified in § 416.10," the process server may "leav[e] a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof," and "thereafter mail[ ] a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint [was] left." See Cal. Code Civ. Proc. § 415.20(a).

Here, on January 28, 2025, Amitay filed in state court a "Proof of Service of Summons," signed under penalty of perjury by Lindon Lilly, a "registered California process server." (See Kassabian Decl. Ex. 3 at 2.) The Proof of Service states said process server, on January 6, 2025, effectuated "substituted service" on David Strull ("Strull"), Jews for Jesus's "Agent for Service," by leaving a copy of the summons and complaint at Jews for Jesus's office in San Francisco, California, with Sheila Tolbert ("Tolbert"), a "person at least 18 years of age apparently in charge at the office," and, on that same date, mailing a copy of the summons and complaint to Strull. (See id. at 1.)

On its face, the Proof of Service establishes sufficient service under § 415.20(a), and, consequently, Amitay is entitled under state law to "a presumption, affecting the burden of producing evidence, of the facts stated in the return." See Cal. Evid. Code § 647; Rodriguez v. Cho, 236 Cal. App. 4th 742, 750 (2015) (holding "a registered process server's declaration of services establishes a presumption that the facts stated in the declaration are true"); Floveyor Int'l, Ltd. v. Superior Court, 59 Cal. App. 4th 789, 795 (1997) (holding presumption arises "if the proof of service complies with the applicable statutory requirements").[1]

---

[1] Although, as one district court has observed, "[i]t is not clear whether [a district court] applies state or federal evidentiary presumptions when deciding whether service was proper under California law," see Baumann v. BMW of North America, LLC, 2017 WL 1538155, at 4 n.4 (C.D. Cal. April 26, 2017), under federal law, "'a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence'," see id. (quoting Sec. & Exch. Comm'n v. Internet Sols. for Business Inc., 509 F.3d 1161, 1163 (9th Cir. 2007), and, consequently, application of federal law would not change the outcome of the instant order.

1     In arguing that Amitay's showing is insufficient, i.e., in an attempt to rebut the
2 presumption, Jews for Jesus first argues that Tolbert, the individual who received from
3 the process servicer the copy of the summons and complaint, is not a person apparently
4 in charge of Jews for Jesus's office.  In that regard, Jews for Jesus relies on Tolbert's
5 declaration, in which she states that her title is "Hospitality Coordinator and Ministry
6 Assistant," that her duties include those of a "receptionist," that she is "not in charge of
7 the office or of anyone who works [there]," that she does "not supervise anyone," and that
8 she does "not have authority to make business decisions for Jews for Jesus."  (See
9 Tolbert Decl. ¶¶ 3-5.)

10    Under California law, however, "the person apparently in charge," see Cal. Code
11 Civ. Proc. § 415.20(a), need only be "a *responsible person*" at the subject office, meaning
12 "a person whose relationship with the person to be served makes it more likely than not
13 that they will deliver process to the named party."  See Bein v. Brechtel-Jochim Group,
14 Inc., 6 Cal. App. 4th 1387, 1393 (1992) (emphasis in original; internal quotations and
15 citations omitted) (finding "gate guard" at gated community in which corporation had its
16 office was "apparently in charge," as corporation "authorized the guard to control access
17 to [it]").  Here, Jews for Jesus's showing fails to establish Tolbert is not a "responsible
18 person" as defined by state law.  Jews for Jesus does not dispute that Strutt worked at
19 Jews for Jesus's office and that Tolbert knew him.  Indeed, it is readily apparent that
20 Tolbert did in fact deliver to Strutt the copy of the summons and complaint she received
21 from the process server, given the timing of the removal and Jews for Jesus's denial,
22 discussed below, that it ever received any mailed copies.

23    In challenging the sufficiency of service, Jews for Jesus next offers evidence that it
24 did not receive the copy of the summons and complaint the process server mailed to
25 Strutt on January 6, 2025.  In particular, Jeffrey Ford ("Ford"), Jews for Jesus's "facilities
26 manager," in a declaration filed in support of the Notice of Removal, avers that he
27 "receive[s] all non-donor mail and packages" and he "can confirm with certainty that no
28 package containing the [s]ummons and [c]omplaint in this action has been received by

6

1  mail at the Jews for Jesus San Francisco office." (See Notice of Removal Ex. C ¶¶ 3, 9.)
2  Although the Court finds no reason to discredit Ford's declaration, such evidence is
3  insufficient to rebut the presumption arising from the process server's declaration that he
4  mailed the copies, as both statements can be true. See, e.g., Rodriguez, 236 Cal. App.
5  4th at 750-51 (holding trial court did not err in finding defendant, by offering declaration
6  that he "did not receive the summons and complaint," failed to rebut process server's
7  declaration establishing substituted service; describing such evidence as "self-serving");
8  Baumann, 2017 WL at 1538155, at *4 (finding defendant, by offering declaration from
9  agent that he "ha[d] no record of receiving service," failed to rebut process declaration's
10 declaration establishing service on corporation's agent; holding district court is "'not
11 required to accept . . . self-serving evidence contradicting the process server's
12 declaration'") (quoting Am. Express Centurion Bank v. Zara, 199 Cal. App. 4th 383, 390
13 (2011).) Further, Jews for Jesus has identified no motive as to why the process server,
14 who "ha[s] been a registered California process server for approximately 25 years" (see
15 Lilly Decl. ¶ 3), would put his long-standing reputation, as well as future employment
16 opportunities, on the line by lying for Amitay, an individual to whom he has no apparent
17 connection, nor has Jews for Jesus shown the process server has lied in connection with
18 any other case or in any other context.

19        Jews for Jesus nonetheless contends the process server's declaration that he
20 mailed a copy should be disregarded, on the asserted ground that, in connection with the
21 instant case, he has made two false statements about other matters. Certainly the Court,
22 as a trier of fact, has the discretion to disregard all testimony from a witness who it finds
23 deliberately made a false statement pertaining to service of process. See, e.g., Ninth
24 Circuit Model Civil Jury Instructions 1.14 (providing, "if you decide that a witness has
25 deliberately testified untruthfully about something important, you may choose not to
26 believe anything that witness said"). The Court next considers the two above-referenced
27 statements.
28 //

The first of those two statements is that the process server, in the Proof of Service, declared that he "informed [Tolbert] of the general nature of the papers." (See Kassabian Decl. Ex. C at 1.) In support of its argument, Jews for Jesus submits a copy of video footage taken from a "camera that is aimed at the office's front door and monitors and records all activity at that location, including all visitors who ring the doorbell or knock on the door." (See Supp. Ford Decl. ¶ 7 (authenticating video footage).) According to Ford, the exhibit captures the encounter, "both audio and video," between the process server and Tolbert on January 6, 2025 (see id. ¶ 11), and does not reflect the process server "identif[ing] or describ[ing] the nature of the papers he handed to her, or otherwise inform[ing] [her] of the contents of the package he was delivering to her" (see id. ¶ 14). The video, however, does not clearly capture all of the words used during the encounter, which lasted approximately two minutes, particularly the words the process server used during his initial comments to Tolbert (see Def.'s Opp. to Mot. to Remand Ex. E), and, under such circumstances, the Court finds Jews for Jesus has not shown the process server's statement as to his interaction with Tolbert is untruthful.

The second such statement, set forth in a declaration submitted by the process server, is that, "[o]n January 2, 2025, and January 3, 2025, [he] attempted service of [d]efendant Jews for Jesus' . . . agent for service at [d]efendant's offices," and that "[b]oth attempts at service were unsuccessful." (See Lilly Decl. ¶ 5.) In support of its argument, Jews for Jesus relies on a copy of video footage recorded by the above-referenced camera on January 2, 2025, and January 3, 2025, beginning each day at 8:00 a.m. and ending at 5:00 p.m. (See Supp. Ford Decl. ¶¶ 7-8 (authenticating video footage).) According to Ford, "no person carrying paperwork came to the Jews for Jesus offices during those dates and times." (See id. ¶ 8.) The process server, however, does not state he made his attempts to serve Strutt between the hours of 8:00 a.m. and 5:00 p.m., nor has Ford, or anyone else, stated the office is only accessible during those hours or that the process server would know of such limited access, as, for example, by signage outside the building, stating the office is only open during specified hours. Under such

circumstances, the Court finds Jews for Jesus has not shown the process server's statement as to attempted service is untruthful.[2]

In sum, the Court finds Jews for Jesus was properly served prior to the date on which the instant action was removed, and, consequently, that the action must be remanded.

**C. Award of Fees**

Amitay argues he is entitled to an award of attorneys' fees and costs, pursuant to 28 U.S.C. § 1447(c), which provides that, when remanding a case to state court, a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." See 28 U.S.C. § 1447(c).

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Here, but for the forum defendant rule, the Court would have diversity jurisdiction over the instant action. As noted, the law as to whether snap removals are a permissible means to circumvent the forum defendant rule is not settled, and, at a minimum, it cannot be said that it is objectively unreasonable for a defendant to rely on such a removal. Further, although the Court has found unpersuasive the arguments made by Jews for Jesus regarding the service of process effectuated on January 6, 2025, the Court declines to find the arguments were so objectively unreasonable as to warrant an award of fees and costs.

---

[2] The Court also notes that the requirement that a process server show the "summons and complaint cannot with reasonable diligence be personally delivered" before engaging in substituted service and the requirement that the person with whom the process server leaves the copy of the summons and complaint must be "informed of the contents" only apply to service on an individual defendant, see Cal. Code Civ. Proc. 415.20(b), not to service on a person who can receive process for a corporate defendant, see Cal. Code Civ. Proc. § 415.20(a). In other words, as to the question of whether Jews for Jesus was properly served, the above-discussed two statements are immaterial. Nevertheless, the Court, in reaching its decision herein, has considered whether the process server made any false statement.

Accordingly, Amitay's request for an award of attorneys' fees and costs will be denied.

## CONCLUSION

For the reasons set forth above, Amitay's motion to remand is hereby GRANTED, Amitay's request for an award of attorneys' fees and costs is hereby DENIED, and the above-titled action is hereby REMANDED to the Superior Court of California, in and for the County of San Francisco.

**IT IS SO ORDERED.**

Dated: April 17, 2025

MAXINE M. CHESNEY
United States District Judge